[Civ. No. 5967.   Third Appellate District.—December 28, 1937.]

WM. G. SNYDER, Petitioner, v. THE SUPERIOR COURT OF AMADOR COUNTY et al., Respondents.

Gumpert & Mazzera, Snyder & Snyder and George F. Snyder for Petitioner.

Levinsky & Jones and Jack J. Miller for Respondents.

THOMPSON, J.—By means of a writ of *mandamus* the petitioner seeks to compel the Superior Court of Amador County to proceed to try a cause of action which is pending in that court, regardless of an arbitration clause contained in the contract upon which it is assumed the cause is founded.

When the case was set for trial, pursuant to a motion on the part of the defendant to submit the controversy to arbitration, evidence was adduced under the provisions of section 1282 of the Code of Civil Procedure, and the court determined therefrom that the cause arises from the written contract which appears in the answer and thereupon ordered that the trial of the cause be suspended pending arbitration and that the parties to the action proceed to arbitration in accordance with the provisions of the agreement. The plaintiff then filed this petition for a writ of *mandamus*.

The complaint in the pending action is couched in two counts. It is alleged that both counts grow out of the same transaction. The first count is for money expended by the plaintiff at the instance of the defendant under the terms of the contract. The second cause of action is a suit to quiet title to the real and personal property involved in the contract. The agreement which was executed April 19, 1933, asserts that the defendant in that suit is the owner of real and personal property in Amador County which is specifically described; that the real estate contains valuable timber and that the property is used for the purpose of conducting a saw-milling enterprise; that the defendant is greatly indebted on account of the operation thereof; that the plaintiff [this petitioner] is to take possession of the property and business and operate the enterprise for the benefit of both parties with a view of acquiring the whole or an undivided one-half interest therein, with an agreement to pay all expenses incident thereto, to employ the defendant as superintendent of the business at a salary of $150 per month, to use his best effort to procure composition with the creditors of the defendant on a basis of twenty per cent of their asserted claims and to pay from the proceeds of the business all liens against the property together with an indebtedness of $10,000 with accrued interest thereon, due and owing to J. A. Chichizola within three years from the date of the contract. The agreement contains a clause that "In the event of a dispute between the parties hereto respecting any matters arising under

this agreement, such matter shall be referred to J. A. Chichizola for determination.'' The answer alleges that the property in question was conveyed to the plaintiff in trust to carry out the terms of the contract.

The petitioner in this proceeding asserts that title X of the Code of Civil Procedure with relation to arbitration does not apply to the provisions of a contract which affects the title to real property; that if the provisions regarding arbitration are deemed to include contracts affecting the title to real property they are violative of article VI, section 5, of the California Constitution which confers original jurisdiction on the superior courts to try civil actions and proceedings, particularly because section 1281 of the Code of Civil Procedure authorizes the parties to a contract to agree that the arbitration proceedings may be heard and determined by a court other than the superior court of the county in which the real property or some part thereof is situated, contrary to the provisions of section 392 of the same code; that the arbitration provisions controvert article IV, section 25, subdivision 3, of the California Constitution by attempting to regulate the practice of courts of justice by special laws; that a controversy between the parties does not arise under the contract in question, and that the arbitration clause in that contract is void because it fails to recite that the parties shall be bound by the determination of the arbitrator.

We are of the opinion sections 1280 and 1281 of the Code of Civil Procedure do apply to controversies affecting real property which arise under the terms of a written agreement between the parties and that such issues may thus be submitted by agreement to arbitration pursuant to those sections. In providing for arbitration these sections of the code include *all controversies* which may arise under the contract. There is no intimation, in the language of the code, that disputes affecting real property are to be excluded from the arbitration provisions. According to modern authority there is no reason why *controversies affecting real property* may not be authorized to be submitted to arbitration by written agreements of the parties involved. In 6 Corpus Juris Secundum, page 159, section 11, it is said:

''It is now well settled that, in the absence of statutory restrictions, contests or disputes as to the title to, or interests in, real estate may be submitted to arbitration.''

■ Title X of the Code of Civil Procedure, with relation to arbitration, is not in conflict with article VI, section 5, of the California Constitution. It does not authorize individuals by agreement to oust superior courts of their jurisdiction to try civil actions involving the title to real property. It merely recognizes the right of individuals to enter into binding contracts requiring the submission to arbitration of differences existing between them with respect to the terms of the agreement. Arbitration is authorized as a method of procedure with the object of securing thereby just and satisfactory settlements of controversies without the necessity of litigation. ■ An arbitration proceeding is not deemed to be the trial of a cause before a judicial tribunal. It merely provides a summary and expeditious means of attempting to determine controversies out of court pursuant to a stipulation of the parties in a written contract. Such statutes have been consistently upheld as constitutional. (3 Am. Jur. 836, sec. 6; 69 A. L. R. 816, note; *Berkovitz* v. *Arbib & Houlberg*, 230 N. Y. 261 [130 N. E. 288]; *Landreth* v. *South Coast Rock Co.*, 136 Cal. App. 457, 462 [29 Pac. (2d) 225].) In 3 American Jurisprudence, page 836, section 6, it is said:

"Statutes recognizing, establishing procedure for, and providing for enforcement of, arbitrations initiated by voluntary agreement of the parties have consistently been upheld against constitutional objections. The statutes have variously been held not to deprive parties of property without due process of law, *not unconstitutionally to confer judicial powers on private individuals, not to violate constitutional provisions vesting the judicial power in constituted courts, not to oust courts of their jurisdiction, and not to impair, but rather to strengthen, the obligations of contracts.*"

In the Landreth case, *supra*, is is said:

"The act in question does not by its terms seem to intend to deprive the superior court of jurisdiction of cases involving contracts with arbitration agreements, but merely to provide a summary means by which the arbitration agreement can be enforced should one of the parties desire to rely upon it."

In the Berkovitz case, *supra*, Mr. Justice Cardozo, speaking for the court, says:

"The Supreme Court does not lose a power inherent in its very being when it loses power to give aid in the repudiation of a contract, concluded without fraud or error, whereby differences are to be settled without resort to litigation. For the right to nullify is substituted the duty to enforce. Contending parties have contracted that the merits of their controversy shall be conditioned upon the report of arbitrators, as upon any other extrinsic fact which agreement might prescribe. Whether they have so contracted is a question which the court must determine for itself. Arbitration Law, section 3. If the contract has not been made or is invalid, the court will proceed, as in any other case, to a determination of the merits. If it has been made and is valid, the court will stay its hand till the extrinsic fact is ascertained, and the condition thus fulfilled. That done, its doors are open for whatever measure of relief the situation may exact. (Citing cases.) The award will be enforced if valid, and for cause will be annulled. 'In common language where no attempt is made at logical accuracy', it is sometimes said that the contract of arbitration 'ousts the jurisdiction' of the judges. (*Wilson* v. *Glasgow Tramways & O. Co.*, 5 Sess. Cases [Scot.] Fourth Series 981.) 'In strictness, however, it does not oust the jurisdiction, but merely introduces a new plea into the cause' on which the judge as at common law is under a duty to decide. (*Wilson* v. *Glasgow etc.*, *supra.*) The situation is the same in substance as when effect is given to a release or to a covenant not to sue. Jurisdiction is not renounced, but the time and manner of its exercise are adapted to the convention of the parties restricting the media of proof. Long before the statute there was a like withholding of relief whenever the subject-matter of arbitration, instead of extending to all differences, was limited to some. (Cases cited.) There was a like refusal to permit the litigation of the merits when the contract, though general, was no longer executory but had ripened into an award. The change resulting from the statute is one of measure and degree.

"We think there is no departure from constitutional restrictions in this legislative declaration of the public policy of the state. The ancient rule, with its exceptions and refinements, was criticized by many judges as anomalous and unjust. (Cases cited.) It was followed with frequent protest, in deference to early precedents. Its hold even upon

the common law was hestitating and feeble. We are now asked to declare it so imbedded in the very foundations of our jurisprudence and the structure of our courts that nothing less than an amendment of the Constitution is competent to change it. We will not go so far. The judges might have changed the rule themselves if they had abandoned some early precedents, as at times they seemed inclined to do. They might have whittled it down to nothing, as was done indeed in England, by distinctions between promises that are collateral and those that are conditions. (Cases cited.) No one would have suspected that in so doing they were undermining a jurisdiction which the Constitution had charged them with a duty to preserve. Not different is the effect of like changes when wrought by legislation.''

■ The sections of the code regarding arbitration may not be deemed to constitute special legislation ''regulating the practice of courts''. They are general in their application to all contracts in which the parties have agreed to arbitrate their differences arising thereunder.

■ The provisions of section 1281 of the Code of Civil Procedure that the parties may ''agree that a judgment of a court of record, specified in writing, shall be rendered upon the award'', and that *''If the court is thus specified they may also specify the county in which the judgment shall be entered''*, are not involved in this proceeding. There is no such stipulation in the present case that the approval of the arbitration award may be presented to any court other than the one in the county where the land is situated. The order submitting the matter for arbitration was made in the superior court of the county in which the land is situated. For the purpose of this writ we may not assume that the award of the arbitrator will be presented for approval or modification to a court of any other county. It therefore becomes unnecessary for us to pass upon that provision of the law.

■ It is contended the arbitration clause contained in the contract is void because it fails to declare that the parties are to become bound by the award. We are of the opinion that omission is not fatal to the contract for arbitration. The statute provides for the procedure which authorizes the rendering of a final binding judgment giving effect to the award of an arbitrator. Section 1292 of the Code of Civil Procedure provides that, ''The judgment so entered has the same force

and effect, in all respects, as, and is subject to all the provisions of law relating to, a judgment in an action." From the language of the contract which agrees to submit controversies arising thereunder to arbitration, we believe that the law implies an agreement to abide by the determination thereof. The language employed in the present case infers that the parties agreed to abide by the decision of the arbitrator. It states that the differences are to be submitted to the arbitrator *"for determination"*. This is a tacit agreement to abide by that determination. There appears to be no other reason for submitting the differences to an arbitrator.

It appears from the answer which was filed in the suit for money expended at the instance of the defendant and to quiet title to real property that both counts thereof are involved in the contract which provides for arbitration in the event of a dispute between the parties thereto regarding any matters arising under the agreement. Upon motion of the defendant to require the controversy to be submitted to arbitration pursuant to the terms of the agreement as a condition precedent to the trial of the cause, evidence was adduced upon that hearing from which the court found that both causes of action grew out of the contract in question, and thereupon ordered the matter to be submitted to arbitration, pending which the trial of the case was suspended. The evidence of that hearing is not before this court. We must assume it adequately supports the court's determination that the action does arise from differences which exist regarding the terms of the contract. That proceeding was in exact accordance with the provisions of section 1282 of the Code of Civil Procedure which reads in part:

"A party aggrieved by the failure, neglect or refusal of another to perform under an agreement in writing providing for arbitration may petition any superior court of the county or city and county where either party resides, for an order directing that such arbitration proceed in the manner provided for in such agreement. . . . The court shall hear the parties. . . . If the finding be that a written provision for arbitration was made and there is a default in proceeding thereunder, an order shall be made summarily directing the parties to proceed with the arbitration in accordance with the terms thereof."

Section 1284 of the same code provides for a stay of the trial of a case pending the arbitration proceedings. Section 1287 of that code provides for the procedure in the superior court for hearing and passing upon the report and recommendations of the arbitrators. Upon that hearing the court is authorized to adopt, correct, modify or vacate the arbitrator's award. Section 1291 of the Code of Civil Procedure provides for the rendering of judgment in accordance with the court's findings upon the return of the award. Section 1293 authorizes an appeal from that judgment by either party. ■ It thus appears that if the court has erred in wrongfully construing the arbitration clause of the contract, or in assuming that the litigation grows out of that contract, this petitioner is afforded a complete remedy by appeal from the judgment which may subsequently be rendered upon application to affirm whatever award the arbitrator may make. Upon this petition for a writ of *mandamus* we may not assume the court has erred in submitting the matter to arbitration. It is a well-known principle that a writ of *mandamus* may not be used to serve as a mere writ of error. Where judicial action can be reviewed and corrected by appeal a writ of *mandamus* will not ordinarily lie. The writ will not issue merely to set aside an order which a court has made, even though it may appear to have been made in excess of jurisdiction or by mistake, when there is an adequate remedy by appeal or otherwise. If the order which the court makes is erroneous it cannot be reversed or corrected by means of the writ of *mandamus*. (*Israel* v. *Superior Court,* 43 Cal. App. 711 [185 Pac. 682]; *O'Neill* v. *Reynolds,* 116 Cal. 264 [48 Pac. 57].) In the proceeding to submit the differences which arose in this case under the contract involved in the civil action, the superior court certainly had jurisdiction to hear and determine the question of submitting the controversy for arbitration. With that determination this court may not interfere upon petition for a writ of *mandamus*. Having ordered the matter to be submitted to arbitration it became necessary for the court, under the provisions of section 1284 of the Code of Civil Procedure, to stay the trial of the cause until the arbitration is concluded pursuant to law. We may not assume the court will not properly determine the effect of whatever award is made by the arbitrator, when the cause of action is regularly tried. If the court fails to

properly determine the effect of the arbitration, either party to the action has his remedy by appeal.

The writ is denied.

Plummer, J., and Pullen, P. J., concurred.

An application by petitioner to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on February 24, 1938.